FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

JUN 0 9 2008

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CIVIL ACTION NO. |
| | * | |
| ALL FUNDS ON DEPOSIT IN ARZI | * | |
| BANK, ZURICH, SWITZERLAND, | * | 1:08-CV-1899-RWS |
| ACCOUNT NO. 220707, AND ALL | * | |
| FUNDS TRACEABLE THERETO; AND | * | |
| ALL FUNDS ON DEPOSIT IN HONG | * | |
| KONG SHANGHAI BANKING | * | |
| CORPORATION (HSBC) REPUBLIC | * | |
| BANK, GENEVA, SWITZERLAND, | * | |
| ACCOUNT NO. 43555TN, FORMERLY | * | |
| HSBC ACCOUNT NO. 31241, AND | * | |
| ALL FUNDS TRACEABLE THERETO, | * | |
| | * | |
| Defendants. | * | |

**EX PARTE APPLICATION FOR WARRANTS OF ARREST IN REM**

The United States of America, through its counsel, respectfully requests that this Honorable Court issue the attached warrants of arrest in rem pursuant to Supplemental Rule G(3)(b)(ii) of the Federal Rules of Civil Procedure. In support of its application, the United States says the following:

1.   On May 30, 2008, the United States filed a complaint for civil forfeiture in rem in the above-referenced case. The Complaint seeks the forfeiture of any and all funds on deposit in Arzi Bank (Switzerland) account number 220707, and any and all funds on deposit in Hong Kong Shanghai Banking Corporation (HSBC)

1

Republic Bank (Switzerland) account number 43555TN, and all funds traceable thereto.

2.   The property described in Paragraph 1 above is not presently in the possession, custody or control of the United States and is not presently subject to any judicial restraining order.

3.   Supplemental Rule G(3)(b)(ii) provides that if property is subject to forfeiture in a civil forfeiture case, and the property is not in the Government's possession, custody or control and is not subject to a judicial restraining order, the Court, "on a finding of probable cause, must issue a warrant to arrest the property."

4.   The property described in Paragraph 1 above has been frozen in Switzerland by the authorities in that country, by Arzi Bank, and by HSBC, as a result of a seizure warrants issued in this district on November 7, 2006, by the Honorable Gerrilyn G. Brill (Warrant Number 1:06-MJ-1351 and 1:06-MJ-1357), and also by virtue of a request made by the United States Government to Switzerland pursuant to a Mutual Legal Assistance Treaty (MLAT) between the two countries.

5.   The facts supporting a finding of probable cause to believe that the property described in Paragraph 1 above is subject to forfeiture are set forth in the Verified Complaint for

Forfeiture, which is attached to this application and incorporated herein.

WHEREFORE, the United States respectfully requests that the Court find that there is probable cause to believe that the property is subject to forfeiture, and issue the attached warrants of arrest in rem directing the U.S. Marshals Service or other duly authorized law enforcement officer to arrest the defendant property by requesting the proper authorities of the Government of Switzerland to restrain, detain, or seize the property, prevent the sale, transfer or alienation of the property, and either release the property into the custody of the United States or maintain the property during the pendency of this proceeding or until further order of this Court.

Respectfully submitted,

MICHAEL JOHN BROWN
ASSISTANT UNITED STATES ATTORNEY
GEORGIA BAR NO. 064437

75 SPRING STREET, S.W.
SUITE 600
ATLANTA, GA 30303
404-581-6131 - PHONE
404-581-6181 - FAX



DUPLICATE

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

MAY 3 0 2008

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,         *

    Plaintiff,            *

         v.               *   CIVIL ACTION NO.

ALL FUNDS ON DEPOSIT IN ARZI  *
BANK, ZURICH, SWITZERLAND,    *
ACCOUNT NO. 220707, AND ALL   *
FUNDS TRACEABLE THERETO; AND  *
ALL FUNDS ON DEPOSIT IN HONG  *
KONG SHANGHAI BANKING        *
CORPORATION (HSBC) REPUBLIC   *
BANK, GENEVA, SWITZERLAND,    *
ACCOUNT NO. 43555TN, FORMERLY *
HSBC ACCOUNT NO. 31241, AND   *
ALL FUNDS TRACEABLE THERETO,  *
                          *
    Defendants.           *



1 C CV 899

## COMPLAINT FOR FORFEITURE

COMES NOW the United States of America, Plaintiff in the above-styled civil action, pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C) and 21 U.S.C. § 881(a)(6), and files this Complaint for Forfeiture, showing the Court as follows:

1.

The Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1345 and 1355.

2.

Venue is proper in this Court pursuant to 28 U.S.C. § 1395.

## BACKGROUND OF THE INVESTIGATION

3.

Since 2003, the Drug Enforcement Administration ("DEA") and other law enforcement agencies in the United States and Canada have participated in a joint investigation of an international drug trafficking and money laundering organization, which has smuggled multi-kilogram quantities of hydroponic marijuana and 3,4 methylenedioxymethamphetamine ("MDMA"), which is commonly known as ecstasy, into the United States from Canada.

4.

From their investigation, the Canadian law enforcement officials learned that Mai Le was laundering drug proceeds for several major Canadian drug traffickers through an extensive network of business entities, couriers, and money remitters. The Canadian law enforcement officials also learned that Mai Le controlled an extensive network of hydroponic marijuana grow houses in the Ottawa, Canada area.

5.

Canadian court-authorized wire intercepts of Mai Le's telephone calls revealed that her organization is based throughout major cities in the United States, including Atlanta, Georgia.

6.

The Canadian wire intercepts revealed that Mai Le used money

remitters and couriers in Canada and the United States, including Georgia.

7.

In Atlanta, Mai Le's organization concentrated on two primary money laundering contacts, Hoang Nguyen, a/k/a/ David, and An Chau, a/k/a An Thein Chau.

8.

Hoang Nguyen is the "money manager" in Mai Le's organization who coordinates money laundering activities in Texas, Illinois, North Carolina, and Georgia by overseeing the activities of money couriers and remitters.

9.

An Chau operated An Chau Services, a/k/a An Chau Inc, which is a money remitting business located at 5150 Buford Highway, Suite 190A, in Doraville, Georgia.  Intercepted telephone calls in Canada and Atlanta revealed that An Chau laundered large amounts of drug proceeds for Mai Le's organization by using his status as a money remitter.

10.

Based on information obtained from the Canadian wire intercepts, DEA Special Agent Kenneth A. McLeod ("Special Agent McLeod") applied for and received a Title III intercept order in the Northern District of Georgia for telephones used by Hoang Nguyen.

3

11.

From December 10, 2003 through March 31, 2004, DEA agents intercepted numerous telephone calls during which Hoang Nguyen discussed the laundering of drug proceeds and the sale and movement of marijuana, and during which Hoang Nguyen coordinated money deliveries to various money remitters, including Hoa Nguyen of HO Express in Atlanta, Georgia, and Hoang Nhung Express in Atlanta, Georgia.

12.

On or about March 29, 2004, in connection with their investigation, DEA agents arrested Phuong Truong and Hau Ngo and seized approximately 160 pounds of hydroponic marijuana.

13.

Hau Ngo later agreed to cooperate with the government in its investigation of Mai Le's organization, and Special Agent McLeod interviewed Hau Ngo as part of the agreement.

14.

Hau Ngo stated that he was a marijuana distributor who worked for a Canadian male known to him only as "Anh."  Hau Ngo further stated that from July 2003 through March 22, 2004, he made numerous currency deliveries to Hoang Nguyen at Anh's request.

15.

Hau Ngo stated that he usually delivered from $200,000 to

4

$400,000 in drug proceeds to Hoang Nguyen, and he estimated that the total amount of drug proceeds he delivered to Hoang Nguyen was more than $1,000,000.

16.

Special Agent McLeod also interviewed a cooperating defendant, who stated that he had laundered drug proceeds for "Hung" by using Atlanta-based money remitters An Chau and Hoa Nguyen.

17.

The cooperating defendant further stated that in June 2003, Mai Le instructed him to pick up drug proceeds from "Hung" and deliver them to Hoang Nguyen.

18.

Special Agent McLeod later determined from business records seized from An Chau and Hoa Nguyen that from February 2003 through September 2003, the cooperating defendant had laundered more than $1,000,000 in drug proceeds received from "Hung."

19.

From his investigation, Special Agent McLeod believes that Hoang Nguyen moved approximately $8 million for Mai Le's organization and employed various money remitters to launder drug proceeds, including An Chau and Hoa Nguyen of HO Express Atlanta.

20.

Special Agent McLeod also learned that Mai Le and Hoang Nguyen

5

laundered some of their drug money by purchasing diamonds.

21.

On March 31, 2004, Special Agent McLeod arrested the Atlanta members of Mai Le's organization, including An Chau, Hoang Nguyen, Hoa Nguyen, Phuong Truong, and Hau Ngo.

22.

On or about the same date, Special Agent McLeod and other law enforcement officers executed search warrants at various locations in the Atlanta area, including money remitters An Chau Services, HO Express, and Hoang Nhung, and the agents seized thousands of documents and computer hard drives from these businesses.

23.

The agents executed a search warrant at Hoang Nguyen's residence, located at 2337 Huntcrest Way, Lawrenceville, Georgia ("the Huntcrest Way property"), and seized paperwork, which revealed that Hoang Nguyen wire transferred money to Vietnam and to various bank accounts around the world.

## HONG KONG SHANGHAI BANKING CORPORATION ACCOUNT NUMBER 43555TN

24.

Wire transfer information seized at the Huntcrest Way property revealed Hong Kong Shanghai Banking Corporation account number 31241 ("HSBC 31241"), with a bank branch address in Geneva, Switzerland and the beneficiary of the wired funds as "CMNTN."

6

25.

Special Agent McLeod also found wire transfer information in the documents seized from the Huntcrest Way property for HSBC account number 14025AE ("HSBC 14025AE") at the same Geneva, Switzerland bank branch location, but the information listed the beneficiary of those wired funds as "ALAIN."

26.

Special Agent McLeod also found a wire transfer application form from An Chau Services, which shows that on February 26, 2003, An Chau Services wire transferred $80,000 into HSBC 14025AE and that the beneficiary of the transfer was "ALAIN."

27.

Hoang Nguyen was laundering money through Vietnam, Israel, the United Arab Emirates, Panama, Singapore, Canada, and Mexico, using An Chau, HO Express, and other money remitters in Atlanta, Georgia and other cities.

28.

On or about April 14, 2004, the United States Attorney's Office for the Northern District of Georgia filed a Mutual Legal Assistance Treaty ("MLAT") request with the United States Department of Justice, Office of International Affairs, and requested that the Swiss Central Authority freeze HSBC 31241 and HSBC 14025AE.

29.

On or about April 15, 2004, Swiss authorities froze HSBC 31241, which contained approximately $324,000.00.

30.

On April 28, 2004, a Grand Jury in the Northern District of Georgia returned an indictment against the Atlanta members of Mai Le's organization, including An Chau, Hoang Nguyen, Hoa Nguyen, Phuong Truong, and Hau Ngo and others, charging them with money laundering in Criminal Indictment 1:04-CR-232-BBM.

31.

During July 2004, Swiss authorities released the freeze on the HSBC bank accounts, and on or about July 21, 2004, someone, later determined to be Anh Ngoc Nguyen, closed HSBC 31241 and withdrew all funds.  Anh Ngoc Nguyen then opened HSBC account number 43555TN ("HSBC 43555TN") and transferred the funds from HSBC 31241 into it.

32.

The United States Attorney's Office for the Northern District of Georgia filed a supplemental MLAT and requested that the Swiss authorities freeze HSBC 43555TN.

33.

When the Swiss authorities froze the account in late July 2004, HSBC 43555TN held only $103,722.00.

34.

In approximately September 2004, Swiss authorities provided
Special Agent McLeod with a summary of information for HSBC 31241.
The information revealed that the holder of HSBC 31241 was Ahn Ngoc
Nguyen at 18 Beverly Street, Suite 902-P, Toronto, Ontario, Canada.

35.

The documents also included a limited summary of account
activity for HSBC 31241, which included wire transfers from An Chau
Services, HO Express in Atlanta, Beitz Corporation, Bertex
Corporation, and other money remitters in the United States.

36.

Special Agent McLeod learned from the Royal Canadian Mounted
Police ("RCMP") that Mai Le used "paper corporations" to launder
and move her drug proceeds. A paper corporation is a company that
exists only on paper and has no function other than as an alter ego
for the incorporator, thereby making it more difficult to trace the
source of drug proceeds.

37.

Beitz Corporation and Bertex Corporation were two paper
corporations that Mai Le owned and controlled.

38.

The documents provided by the Swiss authorities reveal that
Beitz Corporation and Bertex Corporation transferred a total of

9

$259,000 into HSBC 31241.

39.

Based on the information obtained from the MLAT request, on October 28, 2004, Special Agent McLeod traveled to Toronto, Canada to interview Anh Ngoc Nguyen.

40.

Anh Ngoc Nguyen told Special Agent McLeod that he is a diamond merchant who lives in Canada but conducts all of his business in Europe and Vietnam.

41.

Anh Ngoc Nguyen told Special Agent McLeod that he did not maintain any business records because he conducts business entirely on "trust."

42.

Anh Ngoc Nguyen further stated that the $690,000 wired into HSBC 31241 and HSBC 14025AE by An Chau Services was for the purchase of diamonds.

43.

During the interview, Anh Ngoc Nguyen stated that HSBC 31241 belonged to him and that HSBC 14025AE belonged to Intercontinental Diamond Company, which is one of his European diamond suppliers. Anh Ngoc Nguyen further stated that "Alain" owned Intercontinental Diamond Company.

44.

The documents provided by the Swiss authorities reveal that HSBC 14025AE is owned by a Belgian diamond merchant named Alain Lesser.

45.

Based on the limited summary of account activity that he had at the time, Special Agent McLeod believed that Unis Dich Vu had wire transferred a total of $182,400 into HSBC 31241 and that Beitz Corporation and Bertex Corporation had wired transferred a total of $259,000 into that same account.

46.

Special Agent asked Anh Ngoc Nguyen about the wire transfers from Unis Dich Vu, Beitz Corporation, and Bertex Corporation.

47.

Anh Ngoc Nguyen stated that the $182,400 in wire transfers from Unis Dich Vu was for diamond sales to an Indian client he met in Brussels, Belgium.  Anh Ngoc Nguyen further stated that he did not know who had wired the money from Beitz Corporation and Bertex Corporation, but the wires must have been for the purchase of diamonds.

48.

Special Agent McLeod later learned that Unis Dich Vu actually wire transferred a total of $1,624,270.00 into HSBC 31241 from five

11

different banks.

49.

Based on his investigation and the information learned at the interview, Special Agent McLeod believes that Anh Ngoc Nguyen was laundering money through HSBC 31241 and HSBC 14025AE.

50.

On January 3, 2005, the Swiss authorities produced detailed transfer documents for HSBC 31241, which showed that on June 27, 2003, Anh Ngoc Nguyen wire transferred $45,000 to the account of Shimon Yelinek at Bank Hapoalim, Ramat Gan, Israel.  That wire transfer document contains the same transfer information as found during the search of Hoang Nguyen's residence and printed from emails found on Hoang Nguyen's computer.

51.

The email requesting the $45,000 wire transfer was accompanied by a subject header of "Hi Boss" and concluded with the request, "I want $45,000.00 okay boss."  Consequently, Special Agent McLeod believes that Hoang Nguyen or a close associate actually controlled the funds contained in HSBC 31241.

52.

The bank records also show that Anh Ngoc Nguyen wire transferred an additional $126,129.74 from HSBC 31241 into two separate accounts held by Shimon Yelinek at Bank Leumi, Israel.

12

53.

The bank records also show that a wire transfer of $75,000 from HSBC 31241 had been made into an account at J.P. Morgan Chase Bank in New York, for the benefit of N.M. Rothschild and Sons LTD in Singapore and directed to the attention of M. Razumom.  Other documents seized from Hoang Nguyen's residence show additional wire transfers from An Chau Services to that same account, which is held by M. Momiruzzaman Razu ("Razu").

54.

The investigation revealed that Hoang Nguyen sent $410,000 to Razu using An Chau Services.

55.

Special Agent McLeod learned from the RCMP that Razu was the target of an active money laundering investigation in Canada and that Razu was using his Canadian bank accounts to launder money for a Canadian cocaine distribution organization.

56.

Special Agent McLeod's further analysis of the bank records revealed a wire transfer of $80,000 from HSBC 31241 into account number XXXXX7695 at Citibank in New York, for the benefit of Goldrich Brothers Intl Inc.  The wire transfer documentation contains the same transfer information as documents seized from Hoang Nguyen's residence.

57.

During an interview, the Goldrich brothers told Special Agent McLeod that the $80,000 wire transfer from HSBC 31241 was used to purchase diamonds in the name of Bao Ngoc Jewelry, located at 325a Spadina Avenue, Toronto, Ontario, which is the business address for Anh Ngoc Nguyen.  Consequently, Special Agent McLeod believes that Anh Ngoc Nguyen owned Bao Ngoc Jewelry.

58.

An e-mail dated June 20, 2003, which agents seized during the search of Hoang Nguyen's home in March 2003, contained a request that $21,400 be wired to the Goldrich Brothers' account at Citibank.  That e-mail originated from the same Canadian e-mail account that had requested the Shimon Yelinek funds and contained the same transfer information as the other documentation seized from Hoang Nguyen's residence.

59.

Hoa Nguyen told Special Agent McLeod that Hoang Nguyen brought the $21,400 to him and asked him to send it to the Goldrich Brothers account in New York.  Documents seized from Ho Express in March 2003 show that $21,400 was in fact wire transferred to the Goldrich Brothers account.

14

60.

During an interview, the Goldrich brothers revealed that the $21,400 wire transfer to their account was used to purchase diamonds and that a Vietnamese male known to them as "Lenny" came in person to pick up the diamonds.

61.

Special Agent McLeod obtained case documents from RCMP and compared them to documents obtained from the Swiss bank.  Through his document comparison, Special Agent McLeod positively identified "Lenny" as Anh Ngoc Nguyen.  Other documents show that Anh Ngoc Nguyen uses an alias of "Lenny" to conduct diamond and banking business.

62.

Special Agent McLeod learned that the RCMP was conducting a money laundering investigation of the Spadina Avenue business and that Anh Ngoc Nguyen was a target of a joint RCMP/United States Immigration and Customs Enforcement ("ICE") money laundering operation, which had laundered approximately $750,000.00 in Canadian money.

63.

As part of the joint RCMP/ICE investigation, agents of ICE established an undercover bank account at Citibank, New York, to receive laundered funds.

64.

Also during that investigation, Canadian law enforcement officials intercepted telephone calls from "Lenny," during which he discussed the laundering of money and during which he provided identifying information, such as a fax number, which was the same fax number that Anh Ngoc Nguyen listed on his account application for HSBC 31241.

65.

On October 10, 2003, a wire transfer of $113,022.73 was made from HSBC 31241 into the ICE undercover account at Citibank. Additional laundered Canadian funds were wire transferred into the ICE undercover account at Citibank, including $45,000 from An Chau in Atlanta and $41,000 from Hoa Nguyen of Ho Express in Atlanta.

66.

The RCMP conducted an undercover money drop-off. As a result, an additional $250,000 in Canadian funds was laundered through an account at Vattanac Bank, located in Phnom Penh, Cambodia and held in the name of Vannlida Jewelry CO, and then wire transferred in two installments into the ICE undercover account at Citibank.

67.

The investigation revealed that accounts at Vattanac Bank in Phnom Penh, Cambodia, held in the name of Vannlida Jewelry CO and Glorious CO Ltd, also wire transferred a total of $3,195,740 into

16

HSBC 31241.

68.

Special Agent McLeod's analysis of the bank records reveals that a total of $7,646,000.00 was wire transferred into HSBC 31241, and of that total, $2,703,270.00 came from money launderers in the United States known to be under the control of Mai Le, Hoang Nguyen and their organization.

69.

The records further show that HSBC 31241 received a total of $1,049,872.00 from sources in Riga, Latvia, and a total of $3,195,740.00 from sources in Phnom Penh, Cambodia, both of which are known money laundering destinations for Mai Le's organization.

70.

The bank records show that from the time it was opened in April 2002 through July 2004, $2,703,270.00 was wire transferred into HSBC 31241 from accounts associated with known money launderers, including the following:

(a) $690,000.00 from An Chau in Atlanta, Georgia;

(b) $1,689,270.00 from Van Thanh Le of Houston, Texas;

(c) $65,000.00 from Hoa Nguyen of Atlanta, Georgia;

(d) $89,000.00 from Beitz Corporation; and

(e) $170,000.00 from Bertex Corporation.

17

71.

Special Agent McLeod obtained account information for various wire transfers from the United States, which appear on the credit documents for HSBC 31241.  That information revealed that Van Thanh Le, d/b/a Unis Dich Vu, wire transferred a total of $1,624,270.00 into HSBC 31241 from five different banks.

## ARZI Bank Account No. 220707

72.

The bank records revealed that the majority of money wired out of HSBC 31241 was deposited into other Swiss accounts.

73.

Approximately $447,000 was wired into ARZI Bank Account No. 220707 ("ARZI 220707") from HSBC 31241.

74.

Documents seized during the search of An Chau Services on March 31, 2004 showed that An Chau wire transferred $100,000 to ARZI 220707.

75.

The bank records show a wire transfer of $51,020.29 from HSBC 31241 to an account at Emirates Bank International, for the benefit of Zohair M. Masih.  The wire transfer documentation contains the same transfer information as documents seized at Hoang Nguyen's residence.

18

76.

The bank records show that on April 25, 2003, Zohair Masih wire transferred $124,960.46 into ARZI 220707.

77.

Based on the wire transfer information regarding ARZI 220707, the United States Attorney's Office for the Northern District of Georgia filed a supplemental MLAT with the Swiss authorities requesting account information for ARZI 220707.

78.

The documents revealed that ARZI 220707 was owned by Ronen Yechiel Yelinek, who is the brother of Shimon Yelinek.  Shimon Yelinek received a total of more than $171,129 in wire transfers from HSBC 31241.

79.

An analysis of ARZI 220707 shows that Ronen Yechiel Yelinek opened the account on February 3, 2003, with a $400.00 deposit.

80.

Numerous wire transfers of drug proceeds were made into ARZI 220707 immediately after the account was opened, including:

(a)   on February 11, 2003, a transfer of $139,995.50 from HSBC 31241;

(b)   on February 18, 2003, a transfer of $59,995.50 from HSBC 31241;

(c)   on February 24, 2003, a transfer of $59,995.50 from HSBC
      31241; and

(d)   on March 4, 2003, Hoang Nguyen, through An Chau Services
      in Atlanta, transferred $100,000 into ARZI 220707.

81.

The ARZI 220707 account received wire transfers totaling
$547,000.00 from HSBC 31241 and An Chau.

82.

The bank records show that there was only one transfer of
funds out of ARZI 220707.   The document produced by the Swiss
authorities was Ronen Yechiel Yelinek's hand written transfer
instructions to Arzi Bank dated March 31, 2003, ordering the
transfer of $205,000 to Carlos Carrillo at Banco Panameno De La
Vividenda.

83.

Carlos Carrillo is an attorney who represented Shimon Yelinek
in a large scale international gun smuggling case.

84.

Hoang Nguyen transferred $260,000 from HSBC 31241 to an
account at MultiCredit Bank in Panama, which Special Agent McLeod
believes was for the benefit of Shimon Yelinek.

85.

All wire transfers into ARZI 220707 came from known money

20

laundering sources.

86.

On April 26, 2005, a Grand Jury in the Northern District of Georgia returned a sealed indictment against Anh Ngoc Nguyen, charging him with money laundering in Criminal Indictment 1:05-CR-196-BBM.  On August 9, 2005, Anh Ngoc Nguyen was arrested in connection with the indictment in Buffalo, New York, after he entered the United States with his family.

87.

On May 26, 2006, Hoang Nguyen was convicted in this district of money laundering, as charged in Criminal Indictment No. 1:04-CR-232-BBM, NDGa.

88.

On November 7, 2006, DEA agents obtained federal seizure warrants in the Northern District of Georgia for HSBC 43555TN, and ARZI 220707.  See Case Numbers 1:06-MJ-1351 and 1:06-MJ-1357.

89.

On August 7, 2007, Special Agent McLeod and DEA Special Agent Michael Rountree interviewed Ahn Ngoc Nguyen with his lawyer present.

90.

Ahn Ngoc Nguyen stated that he began selling diamonds in 1996, which he sold in Vietnam and in Canada.

21

91.

Ahn Ngoc Nguyen stated that he was paid in cash for his diamond sales in Vietnam, which he took to an Asian male he knew as "Uncle Five." For a 1% commission, Uncle Five wire transferred the money back to Ahn Ngoc Nguyen in Canada.

92.

At some point after he opened a bank account in Switzerland, Ahn Ngoc Nguyen paid a commission of 1% to an Asian female in Houston, Texas named "Van" to transfer the money.

93.

According to Ahn Ngoc Nguyen, Van would sometimes front him the money that was to be transferred, and when this happened, Ahn Ngoc Nguyen would pay back Van through an intermediary in Toronto, Canada named Sammy.

94.

From their investigation, the agents believe that Sammy is the brother of Hoang Nguyen.

95.

Ahn Ngoc Nguyen stated that Sammy was a very large money mover in Toronto, Canada, and that Sammy also moved money to Korea, Japan, and Vietnam.  Ahn Ngoc Nguyen also stated that Sammy is associated with Bertex Corporation.

96.

Ahn Ngoc Nguyen later began to deal directly with Sammy instead of Van.

97.

In 2003, Ahn Ngoc Nguyen met an individual known as Moshe. From their investigation, the agents believe that Moshe is an alias used by Shimon Yelinke.

98.

Moshe also introduced Ahn Ngoc Nguyen to Adeli Tabrizi, who owned Dana Jewelry located in Toronto, Canada.

99.

Anh Ngoc Nguyen eventually began transferring money for both Moshe and Tabrizi for a 1% commission on each transfer.

100.

On October 17, 2007, Special Agent Rountree and DEA Special Agent James R. Cockrell again interviewed Ahn Ngoc Nguyen.

101.

During a photo line-up consisting of nine photos, Ahn Ngoc Nguyen identified one photo as being Moshe, which was in fact a photo of Shimon Yelinek.

102.

Ahn Ngoc Nguyen stated that he originally believed that Yelinek was conducting legitimate diamond purchases. However, Ahn

23

Ngoc Nguyen later realized that he was involved in a money laundering scheme being conducted by Yelinek.

103.

Ahn Ngoc Nguyen admitted that after realizing he was involved in money laundering, he continued conducting business with Yelinek.

104.

The funds in HSBC 43555TN (formerly HSBC Account No. 31241) and ARZI 220707 are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A), because they were involved in or are traceable to a money laundering transaction or an attempted money laundering transaction in violation of 18 U.S.C. § 1956 or 18 U.S.C. § 1957.

105.

The funds in HSBC 43555TN (formerly HSBC Account No. 31241) and ARZI 220707 are also subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) on the grounds that they constitute or were derived from proceeds of a specified unlawful activity as defined in 18 U.S.C.§ 1956(c)(7), or a conspiracy to commit such offense.

106.

The funds in HSBC 43555TN (formerly HSBC Account No. 31241) and ARZI 220707 are also subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) on the grounds that they were

24

furnished or intended to be furnished in exchange for a controlled substance, that they constitute proceeds traceable to such an exchange, or they were used or intended to be used to facilitate the sale or exchange of a controlled substance.

WHEREFORE, Plaintiff prays:

(1)    that the Court forfeit the funds held in HSBC 43555TN (formerly HSBC Account No. 31241) and ARZI 220707 to the United States of America;

(2)    that the Court award Plaintiff the costs of this action; and

(3)    that Plaintiff have such other and further relief as the Court deems just and proper under the facts and circumstances of this case.

This 3rd day of May, 2008.

                                Respectfully submitted,

                                DAVID E. NAHMIAS
                                UNITED STATES ATTORNEY

                                MICHAEL JOHN BROWN
                                ASSISTANT UNITED STATES ATTORNEY
                                Georgia Bar No.: 064437

600 United States Courthouse
75 Spring Street, S.W.
Atlanta, GA 30303
Telephone: (404) 581-6000
Fax: (404) 581-6181

25

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,          *
                                   *
        Plaintiff,                 *
                                   *
        v.                         *    CIVIL ACTION NO.
                                   *
ALL FUNDS ON DEPOSIT IN ARZI       *
BANK, ZURICH, SWITZERLAND,         *
ACCOUNT NO. 220707, AND ALL        *    _____
FUNDS TRACEABLE THERETO; AND       *
ALL FUNDS ON DEPOSIT IN HONG       *
KONG SHANGHAI BANKING              *
CORPORATION (HSBC) REPUBLIC        *
BANK, GENEVA, SWITZERLAND,         *
ACCOUNT NO. 43555TN, FORMERLY      *
HSBC ACCOUNT NO. 31241, AND        *
ALL FUNDS TRACEABLE THERETO,       *
                                   *
        Defendants.                *

## VERIFICATION OF COMPLAINT FOR FORFEITURE

I, Special Agent James R. Cockrell, have read the Complaint

for Forfeiture in this action and state that its contents are true

and correct to the best of my knowledge and belief.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of

perjury that the foregoing is true and correct.

This _28th_ day of May, 2008.

_____
SPECIAL AGENT JAMES R. COCKRELL
DRUG ENFORCEMENT ADMINISTRATION